## UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## SOUTHERN DIVISION

| WILLIAM CODY,<br><br>Plaintiff,<br><br>vs.<br><br>ASHLEY MCDONALD, TIM MEIROSE,<br>DARIN YOUNG, HEATHER BOWERS,<br>JESSICA STEVENS, KAYLA TINKER, DR.<br>MARY CARPENTER, MD, LINDA MILLER-<br>HUNOFF, STEVE BAKER, AND JENNIFER<br>WAGNER,<br><br>Defendants. | 4:14-CV-04155-RAL<br><br><br>OPINION AND ORDER ADOPTING<br>REPORT AND RECOMMENDATION ON<br>CROSS MOTIONS FOR SUMMARY<br>JUDGMENT |
| --- | --- |

## I. INTRODUCTION

William Cody ("Cody"), an inmate at the South Dakota State Penitentiary ("SDSP"),

filed a pro se complaint against the above-captioned SDSP officials (collectively "Defendants"),

alleging that Defendants deprived him of adequate legal assistance, denied him access to certain

of his own medical reports, and improperly intercepted his mail, all in violation of his First

Amendment and Fourteenth Amendment rights. Doc. 1. Both parties filed their own motions for

summary judgment. Docs. 26, 41. The case was referred to Magistrate Judge Veronica Duffy,

who issued a Report and Recommendation on November 12, 2015. Doc. 58. Judge Duffy

recommended that Defendants' motion for summary judgment be granted as to the denial-of-

access-to-the-courts claims and denied as to the interference-with-mail claim. Doc. 58 at 55.

1

Judge Duffy also recommended that Cody's motion for summary judgment be denied in its entirety. Doc. 58 at 55.

Within the appropriate time periods, both parties filed objections to the Report and Recommendation.[1] Docs. 60, 64. Each objects to Judge Duffy's recommendation that summary judgment be denied on the interference-with-mail claim. Doc. 60 at 1–2; Doc. 64 at 17–22. Additionally, Cody objects to Judge Duffy's recommendation that summary judgment be granted for Defendants on the denial-of-access-to-the-courts claims. Doc. 64 at 4–10.

This Court reviews a report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." "In the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murrillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). This Court has conducted a de novo review of the record, and for those reasons explained below, this Court overrules the objections and adopts the Report and Recommendation.

## II. DISCUSSION

### A. Denial-of-Access-to-the-Courts Claims

In his Verified Complaint, Cody's first two counts allege that Defendants failed to provide him with the legal assistance he needed in order to prepare a complaint regarding medical treatment and medications and that Defendants denied him access to outside provider Dr. Griess's medical report dated March 28, 2014, and certain utilization management ("UM")

---

[1]Defendants filed within the fourteen-day period to file written objections. See Docs. 58, 60. Cody filed his objection within the time enlarged by the Court. Doc. 63.

reports where Cody was denied various medical treatments. Doc. 1 at ¶¶ 35–45, 51–52. As to these two counts, Judge Duffy recommended that Defendants' motion for summary judgment be granted because Cody had failed to show an "actual injury." Doc. 58 at 55.

In order to prove a violation of the right of meaningful access to the courts, Cody must show that the Defendants did not provide him an opportunity to litigate a claim "'which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" Hartsfield v. Nichols, 511 F.3d 826, 831–32 (8th Cir. 2008) (quoting White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007)); see also Klinger v. Dep't of Corrs., 107 F.3d 609, 617 (8th Cir. 1997) (concluding that even though plaintiffs showed complete and systematic denial of access to law library and legal assistance, their claim failed as matter of law because none suffered actual injury or prejudice). "To prove actual injury, [a plaintiff] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" Hartsfield, 511 F.3d at 832 (quoting Lewis v. Casey, 518 U.S. 343, 353 (1996)); see also Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998) ("[I]t is not sufficient for standing to show that court access could be impeded. Rather, a prisoner must show that it actually has been." (quotation omitted)); Goff v. Nix, 113 F.3d 887, 890–91 (8th Cir. 1997) (holding that inability of co-defendants to work together to recruit witnesses for upcoming trial "impeded" access to the courts).

The Supreme Court of the United States in Lewis v. Casey, stated that because precedent "did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." 518 U.S. at 351. The Supreme Court continued that:

> [An] inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to

> pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Id.

More recently, the Supreme Court, in Christopher v. Harbury, 536 U.S. 403, 412–14 (2002) stated that denial-of-access-to-courts cases have emerged into two separate categories which include either "forward-looking" or "backward-looking" claims. Forward-looking claims are those where a "systemic official action frustrates a plaintiff . . . in preparing and filing suits at the present time." Id. at 413. The object of this type of suit "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." Id. On the other hand, backward-looking claims involve those allegations that "cannot now be tried . . . no matter what official action may be in the future." Id. at 414. "The ultimate object of [backward-looking] claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." Id.

In the Report and Recommendation, Judge Duffy reasoned that Cody did not prove he suffered an actual injury because he never filed a complaint regarding Defendants' alleged denials of his medical care and Cody apparently could still file such a complaint.[2] Doc. 58 at 44–45, 47. If a complaint may still be filed, Judge Duffy concluded that "it is impossible for the court to see how claims in that complaint have already been frustrated or impeded by

---

[2]Cody also alleged that another case he filed in 2005 satisfied the actual injury requirement, but Judge Duffy found that reliance insufficient because the 2005 case was "outside of the [statute of] limitations period for the instant lawsuit." Doc. 58 at 43. Cody does not object to that portion of the analysis in the Report and Recommendation. See Doc. 64. Even if Cody had objected to that section, Judge Duffy's finding was proper. See White, 494 F.3d at 681.

4

defendants." Doc. 58 at 45. Cody objects to Judge Duffy's recommendation and argues that he did suffer an actual injury because he "was denied the opportunity to *present* his claims." Doc. 64 at 8. Cody maintains that the actual injury in both of his denial-of-access claims is forward-looking and thus he is not required to show that he lost a case which alleged medical denials due to the Defendants' actions. Doc. 64 at 8–10. Cody also argues that his ability still to file a complaint about the alleged medical denials does not affect whether his case involves forward-looking claims. Doc. 64 at 8–10.

After a de novo review of the record, this Court concludes that Cody has failed to show actual injury in his denial-of-access-to-the courts claims. Cody has not shown that his separate medical care case was so hindered by Defendants' actions that he was unable to file a complaint because he merely alleges that he was "forced to proceed *pro se* in the preparation of" the separate complaint. Doc. 1 at ¶ 23; Lewis, 518 U.S. at 351. Although Cody points to dicta in Christopher to support his argument that he lacks the "present" ability to file a complaint, the United States Court of Appeals for the Eighth Circuit has previously characterized a similar allegation as "insufficient" to prove actual injury because it was "speculative" in nature. Hartsfield, 511 F.3d at 832 (affirming district court's finding that plaintiff failed to allege actual injury because plaintiff "only roughly and generally asserted he was prevented from filing because he did not know what arguments to make").

Moreover, Cody has not shown that Defendants' withholding of certain reports or legal resources is currently impeding his ability to prepare and file a separate complaint. Cody has either received or reviewed all the documents complained of; he received Dr. Griess's March 28, 2014 report on June 9, 2014, Doc. 55 at ¶ 266, and he was allowed access to the UM reports that denied him medical treatment in August of 2014, Doc. 55 at ¶ 283; Doc. 42-4. See Christopher,

536 U.S. at 413 (stating that the object of forward-looking, denial-of-access-to-the-courts claims is to remove the frustrating condition). And as correctly noted by Judge Duffy, Cody appears to be able to file a § 1983 case concerning those alleged medical denials. Doc. 58 at 44–45, 47. Many courts have found that where an inmate receives the documents complained of and there is sufficient time in which to still act, the inmate has not suffered an actual injury. See, e.g., Burnett v. Leatherwood, 557 F. App'x 739, 740, 741 n.1 (10th Cir. 2014) (finding that although plaintiff's amended complaint was not mailed until four days after it was placed in mailroom, the plaintiff did not show he suffered an actual injury because the amended complaint reached the court before the expired deadline); Johnson v. Barczak, 338 F.3d 771, 773 (7th Cir. 2003) (per curiam) (finding that one-year delay caused by prison officials did not affect plaintiff's ability to pursue the case because "a delay becomes an injury only if it results in 'actual substantial prejudice to specific litigation'" (quotation omitted)); Cody v. Weber, 256 F.3d 764, 770 (8th Cir. 2001) (citing Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996)) (noting that in Kensu, the plaintiff did not sufficiently show actual injury because he could not prove he suffered prejudice when he ultimately regained possession of all the disputed papers); Purkey v. Green, 28 F. App'x 736, 742 (10th Cir. 2001) (finding that because plaintiff was able to file his claims that "[a]t worst, defendants' misconduct temporarily, but not fatally, delayed, and did not unreasonably hinder, the filing of [plaintiff's] claims"); Smith v. Campbell, No. 02-10254-BC, 2003 WL 22258193, at *5 (E.D. Mich. Sept. 30, 2003) (finding alleged three-week delay in receiving letter from appellate court did not prejudice inmate's ability to seek relief because after inmate received the letter he had sufficient time to respond and return proof of service); Benjamin v. Kerik, 102 F. Supp. 2d 157, 164 (S.D.N.Y. 2000) aff'd sub nom. Benjamin v. Fraser, 264 F.3d 175 (2d Cir. 2001) (stating that "if an inmate experienced delays in pursuing a civil claim, but

6

files acceptable legal pleadings within court deadlines, he cannot claim that he was prejudiced by shortcomings in a prison facility's law library, because he has sustained no relevant actual injury"). Thus, Cody failed to show he suffered an actual injury in both of his denial-of-access-to-the-courts claims and his objections are overruled. See Beaulieu v. Ludeman, 690 F.3d 1017, 1047 (8th Cir. 2012) (finding an alleged denial of access to legal computers did not amount to an actual injury because court granted inmate an extension of time for missed deadline); cf. White v. Kautzky, 269 F. Supp. 2d 1054, 1063 (N.D. Iowa 2003) (finding genuine issue of material fact on inmate's access-to-the-courts claim where it was alleged that contract attorney provided inadequate assistance because the statute of limitations on the separate claim had run).

## B. Interference-with-Mail Claim

Both Defendants and Cody object to Judge Duffy's recommendation that summary judgment be denied on the interference-with-mail claim. Those objections are discussed separately below.

### 1. Defendants' Objections

Defendants raise four objections. First, Defendants argue that interference with Cody's mail was justified because the incoming mail was either inadvertently placed in SDSP's file for Cody because Cody did not alert the proper mail staff prior to receiving outside reports, or the mail was not provided to Cody because a SDSP written policy provides that inmates are not entitled to review medical reports from outside providers. Doc. 60 at 3–4. However, as properly noted by Judge Duffy, these are "contradictory" explanations that preclude summary judgment because Defendants "themselves have muddied the waters" for why Defendants withheld Dr. Griess's March 28, 2014 report from Cody's mail. Doc. 58 at 50–51, 54. Thus, Defendants' first objection is overruled.

7

Next, Defendants object to Judge Duffy's reference to certain of Dr. Griess's reports in analyzing the interference-of-mail claim. Doc. 60 at 8–9. Specifically, Defendants object to consideration of Dr. Griess's subsequent reports dated October 24, 2014 and November 17, 19, and 26, 2014. Doc. 60 at 8–9. Defendants argue that consideration of reports other than Dr. Griess's March 28, 2014 report was improper because in his Verified Complaint Cody only alleged that the March 28, 2014 report was withheld. Doc. 60 at 9. Defendants also point to Judge Duffy's analysis of count two, the access-to-medical-records claim, because Judge Duffy restricted that analysis to only those issues alleged in count two, which excluded outside medical reports other than the March 28, 2014 report. Doc. 60 at 9; Doc. 58 at 45–46. Defendants urge this Court to find that Judge Duffy's references to reports other than the March 28, 2014 report were misplaced, exclude those subsequent outside medical reports from the interference with mail claim analysis, and find that insufficient grounds remain to preclude summary judgment in Defendants' favor. Doc. 60 at 8–10.

Judge Duffy referenced the subsequent reports from Dr. Griess only after reasoning that Defendants' contradictory explanations and failure to address the reasonableness factors as set forth in Turner v. Safley, 482 U.S. 78 (1987) precluded finding as a matter of law in favor of either party. Doc. 58 at 54–55. Her reference to those reports was in the context of observing that the record still "is highly unsatisfactory for purposes of determining . . . summary judgment." Doc. 58 at 54. Summary judgment is not proper for Defendants on the interference-with-mail claim for those reasons Judge Duffy alternatively outlined, and there was nothing untoward about her reference to Dr. Griess's subsequent reports.

Defendants then maintain that Cody has not proven his First Amendment claim to involve regular and unjustifiable interference and that "an isolated incident of mail tampering is

8

usually insufficient to establish a constitutional violation." Doc. 60 at 10 (internal quotation marks and quotation omitted). Defendants argue that Cody has only proven that the delay in receiving the March 28, 2014 report was a "'sporadic, isolated incident" which does not amount to regular prison interference. Doc. 60 at 10 (internal quotation marks and quotation omitted). Although Cody eventually received Dr. Griess's March 28, 2014 report on June 9, 2014, Judge Duffy properly noted that neither party fully addressed whether the SDSP's mail policy is a reasonable prison regulation under the Turner factors. Doc. 58 at 54–55; see also Hodgson v. Fabian, 378 F. App'x 592, 594 (8th Cir. 2010) (per curiam) (unpublished) (noting that summary judgment was proper for inmate who received all the mail at issue in his First Amendment delay-of-mail claim where the policy under which the mail was withheld had been previously recognized as reasonable prison regulation). Moreover, Judge Duffy correctly distinguished cases of short-term, sporadic delays unrelated to content because Cody alleged a content based delay of mail that last over two months. See Doc. 58 at 52–53.

Finally, Defendants contend that they are entitled to summary judgment on the interference-with-mail claim because Cody "cannot point to any continuing violation of federal law." Doc. 60 at 11–12. Actions against state officials that seek prospective relief must concern an ongoing violation of federal law. Green v. Mansour, 474 U.S. 64, 68 (1985). The violation must be ongoing "as opposed to cases in which federal law has been violated at one time or over a period of time in the past." Papasan v. Allain, 478 U.S. 265 (1986). A federal court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (alteration in original) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)); see also Papasan, 478 U.S. at 278–79 (noting

9

that inquiry "will not in many instances be that between day and night" and that federal courts should "look to the substance rather than to the form of the relief sought" (internal citation omitted)).

In this case, there is at least a question of fact on whether there exists a continuous violation of federal law because no evidence establishes that the mail policy, which is one of the Defendants' explanations for withholding Cody's mail, has been discontinued, replaced, or modified. Defendants maintain that Cody was informed on multiple occasions that he should let the appropriate mail authorities know when he requests outside reports to assure that his mail gets to him. Doc. 60 at 12. But if the mail policy is an unreasonable prison regulation, an ongoing implementation of that policy would constitute an ongoing violation of federal law, regardless of whether the Defendants have reached an agreement with Cody to provide him with future outside medical reports. See Lynch v. Pub. Sch. Ret. Sys. of Mo., Bd. of Trustees, 27 F.3d 336, 339 (8th Cir. 1994) (providing that the Eleventh Amendment did not bar state employees' suit challenging state statute since continued implementation of unconstitutional scheme would be an ongoing violation of federal law, warranting prospective relief); Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1338 (11th Cir. 1999) (holding that "where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied"). Therefore, Defendants' objections to the Report and Recommendation concerning the interference-with-mail claim are overruled.

## 2. Cody's Objections

Cody has made three objections regarding Judge Duffy's recommendation that his summary judgment motion be denied on the interference-with-mail claim. First, Cody argues that the Report and Recommendation "erroneously narrowed" his interference-with-mail claim to

10

the First Amendment and that his reliance on Knight v. Lombardi, 952 F.2d 177 (8th Cir. 1991) was improperly disregarded. Doc. 64 at 18–19. In Knight, the Eighth Circuit stated that "the failure to promptly notify Knight of the seizure [of his mail] was arguably a procedural due process violation."[3] 952 F.2d at 179. Judge Duffy rejected Cody's reliance on Knight for two reasons. Doc. 58 at 53. First, Judge Duffy distinguished Knight from Cody's case because the plaintiff in Knight asserted procedural due process claims under the Fifth and Fourteenth Amendments, whereas Cody "asserts a First Amendment claim, which is subject to a different analysis." Doc. 58 at 53. Second, Judge Duffy noted that the plaintiff's claims in Knight were rejected "because [Knight's] ability to submit grievances to protest the seizure of his mail was not compromised," similar to Cody who filed "numerous grievances about the [mail] seizure . . . and the underlying [mail] policy." Doc. 58 at 53–54.

Cody's Verified Complaint did allege violations of the Fourteenth Amendment in his interference-with-mail claim. Doc. 1 at ¶ 53 ("The acts and omissions . . . by Defendants . . . that misdirected, seized or allowed to be seized, and held or destroyed mail addressed to Plaintiff personally, did deny Plaintiff freedoms guaranteed to him by the First and Fourteenth Amendments to the Constitution of the United States."). Thus, Judge Duffy's first reason for distinguishing Knight was misplaced.    Yet, Judge Duffy's alternative reasoning for distinguishing Knight—that Cody was not prohibited from submitting grievances about the seizure of the mail—remains appropriate. Cody filed grievances as early as June 5, 2014,

---

[3]In Knight, particular letters were seized from Knight's mail in June of 1988 during an investigation of, among other things, whether Knight was having an affair with a female prison guard. 952 F.2d at 178. The letters were withheld without immediate notice to Knight and were sent to an outside agency for fingerprint analysis. Id. Knight wrote to a director in his prison, complaining about his personal mail being withheld on July 12. Id. The director responded on July 21 and informed Knight that the letters were being held as evidence in a case against a staff person who was placed on administrative leave. Id.

regarding the seizure of his mail and the mail policy, and he was provided the withheld reports no later than June 9, 2014. Docs. 42-18, 42-19, 42-25, 42-30; see also Doc. 55 at ¶ 266. Thus, like Knight, Cody has no evidence of injury flowing from the alleged interference with his receipt of mail.

Next, Cody asserts that the Report and Recommendation "ignored" his citation to Williams v. Brimeyer, 116 F.3d 351 (8th Cir. 1997). Doc. 64 at 20. William was not cited in the Report and Recommendation, see Doc. 58, but that case also is distinguishable from Cody's case. In Williams, the Eighth Circuit noted that it had previously held that a prison's blanket ban on incoming Church of Jesus Christ Christian ("CJCC") publications was unconstitutional. 116 F.3d at 354 (citing Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985); Nichols v. Nix, 16 F.3d 1228 (8th Cir. 1994) (per curiam)). Cody's claim involves the alleged withholding of outside medical reports, not religious-affiliated mail or publications.

Finally, Cody objects to the Report and Recommendation because he believes that he addressed the Turner reasonableness factors in his summary judgment briefing. Doc. 64 at 20–21. Cody's objection here is mistaken. Judge Duffy did not discount Cody's briefing regarding Turner; on the contrary, Judge Duffy stated that Cody's reference to an "obvious and easy alternative" of reviewing and redacting prohibited items in outside medical reports that are mailed to the SDSP "dovetails nicely with the fifth Turner factor." Doc. 58 at 54. Judge Duffy was correct in stating, however, that Cody's proposed alternative did not address the other four Turner factors. See Doc. 58 at 50 (listing Turner factors). Thus, Cody's objections to Judge Duffy's recommendation on the interference-with-mail claim are overruled.[4]

---

[4]Cody also objected to two facts stated in the Report and Recommendation: (1) that the Verified Complaint in this matter was filed on October 14, 2014; and (2) that Ashley McDonald was not the contract attorney. Doc. 64 at 2–4. Cody takes issue with October 14, 2014, because that was

12

## III. CONCLUSION

For good cause, it is hereby

ORDERED that Defendants' Objections to Report and Recommendation and Cross

Motions for Summary Judgment, Doc. 60, are overruled. It is further

ORDERED that Plaintiff's Objections to Report and Recommendation on Cross Motions

for Summary Judgment, Doc. 64, are overruled. It is further

ORDERED that the Report and Recommendation on Cross Motions for Summary

Judgment, Doc. 58, is adopted. It is further

ORDERED that Plaintiff's Motion for Summary Judgment, Doc. 26, is denied. It is

finally

ORDERED that Defendant's Motion for Summary Judgment, Doc. 41, is granted in part

and denied in part consistent with the Report and Recommendation.

DATED this 14th day of March, 2016.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

---

the date the Verified Complaint was filed, not dated for mailing. Doc. 64 at 2–4. Cody points to the prison mailbox rule for support of this argument. Doc. 64 at 2. Although the prison mail box rules applies to civil complaints filed by prisoners, Sulik v. Turner Cty., Mo., 316 F.3d 813, 815 (8th Cir. 2003), rev'd on other grounds, 393 F.3d 765 (8th Cir. 2005), the time of filing of the Verified Complaint was not directly at issue on summary judgment and Judge Duffy's references to the filing date of the Complaint are not inappropriate. See Doc. 58 at 29, 43. Finally, Cody contends that the contract attorney who could not assist him due to a conflict of interest was "D. 'Sonny' Walter," rather than Ashley McDonald. Doc. 64 at 4. Whether the original contract attorney was Walter or McDonald is not material to the issues presented on summary judgment because the attorney whose conduct is at issue is that of the appointed attorney, Manuel de Castro. Thus, Cody's factual objections are overruled.